# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MELISSA M.,[1] | ) |
| | ) No. 19 CV 745 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| | ) |
| | ) January 14, 2020 |
| Defendant. | ) |

## MEMORANDUM OPINION and ORDER

Melissa M. ("Melissa") seeks disability insurance benefits ("DIB") and supplemental security income ("SSI") on the basis that she is disabled by severe degenerative disc disease, osteoarthritis, diabetes mellitus, asthma, migraines, bipolar disorder, anxiety disorder, polysubstance abuse in remission, and obesity. After the Commissioner of the Social Security Administration denied her applications, Melissa filed this action seeking judicial review. Before the court are the parties' cross motions for summary judgment. For the following reasons, Melissa's motion is denied and the government's is granted:

## Procedural History

In March 2015 Melissa filed applications for DIB and SSI alleging a disability onset date of December 1, 2013. (Administrative Record ("A.R.") 17, 217-31.) After

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect her privacy to the extent possible.

her applications were denied initially and upon reconsideration, (id. at 17, 79-104, 107-36, 146-48), Melissa requested and was granted a hearing before an administrative law judge ("ALJ"), (id. at 17, 156-57, 161-63). In June 2017 Melissa appeared for the hearing along with her attorney, a medical expert ("ME"), and a vocational expert ("VE"). (Id. at 17, 37-78.) The ALJ issued a decision in November 2017 finding that Melissa is not disabled. (Id. at 17-30.) When the Appeals Council declined Melissa's request for review, (id. at 1-8), the ALJ's decision became the final decision of the Commissioner, *see Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Melissa filed this lawsuit seeking judicial review of the Commissioner's decision, and the parties consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 7).

## Facts

Melissa has worked in bookkeeping and clerical positions but was fired from her part-time job in October 2013 for saying "something dirty." (A.R. 45-49.) Melissa asserts that beginning on December 1, 2013, she became unable to sustain competitive work because of her medical conditions. (Id. at 17, 20, 50.)

### A. Medical Evidence

The medical records Melissa submitted to the ALJ show that she has received treatment for bipolar disorder, borderline personality disorder, bulimia, and cocaine and alcohol dependence. (A.R. 404, 431, 457, 459, 464, 585, 812, 832, 842, 845, 848-49, 852, 855, 866, 870-72, 878-79, 882, 885, 890, 895-96, 899-900, 903-04, 906-07, 910-12, 914-16, 1407, 1785, 1796, 1829, 1842, 1855, 1879.) She has been prescribed Trazadone, Topomax, Lamictal, Risperdal, Xanax, and other medications to treat her

mental impairments. (Id. at 432, 433-50, 453-58, 461, 467, 1839.) She reported that her medications improve her symptoms. (Id. at 451.) Treatment records from May 2015 show that she experienced panic attacks once or twice per month and that her bipolar disorder and anxiety were "stable." (Id. at 434-35; see also id. at 917.) She denied "interpersonal problems" and showed "[f]ocused" attention and concentration. (Id. at 435, 451-52, 465, 918.) In December 2016 Melissa's bipolar disorder was noted to be "in full remission, most recent episode depressed." (Id. at 1033-34; see also id. at 1797.)

Melissa has experienced ankle swelling and pain since spraining both ankles. (Id. at 368-71, 379, 415, 483, 541, 549, 556, 573, 713-14, 930, 1552.) She underwent an MRI on her left ankle, which showed flatfoot and midfoot valgus deformity, mild tenosynovitis of the posterior tibialis tendon, joint effusion and mild degenerative changes, and the possibility of mild chronic sprain. (Id. at 372-73, 550, 807-08.) She reported that her symptoms worsen with prolonged standing or walking. (Id. at 23, 368-70, 374.) Melissa has received nerve block injections and taken medications to control her symptoms. (Id. at 23, 368-71, 540.) She was prescribed a splint and ankle-foot orthosis braces. (Id. at 418, 464, 487, 543, 924.) March 2015 x-rays show an "old avulsion" in her left ankle, but nothing remarkable about the right ankle. (Id. at 23, 424-25.)

Melissa also has suffered from knee pain and arthritis. (Id. at 368, 408, 415, 417, 464, 628-30, 713-14, 1428, 1512, 1552.) Melissa started physical therapy in January 2015, which reportedly helped. (Id. at 379, 419, 421, 932, 1057, 1057-58,

3

1475, 1482.) The therapist recommended that she undergo a low-level strengthening program and wear braces and shoes at home. (Id. at 379, 394; see also id. at 479, 499-500, 540.) Melissa had x-rays taken of her knees in March 2015, which showed early osteoarthritis. (Id. at 417, 421-23, 943, 999; see also id. at 1012 (showing joint effusion and degenerative changes).) She has treated her knee pain (reported as an 8 or 9 out of 10) with medication and injection therapy with success. (Id. at 921, 931-32, 935, 941, 950-52, 958, 960, 966-68, 972, 974, 977-78, 981, 988, 1057-58, 1490, 1498.) She has had examinations showing normal range of motion, normal gait, normal sensation, and normal strength. (Id. at 404, 407, 414, 788, 1030, 1051.)

Melissa also has experienced back and neck pain. (Id. at 369-70, 394, 552, 569, 739, 800, 985, 1021, 1053, 1512.) She was reported to have a "guarded antalgic gait and decreased range of motion of the lumbar spine" in January and February 2015. (Id. at 369-70.) She underwent a cervical MRI in May 2016, which showed scattered small marginal disc osteophytes and facet arthropathy with mild foraminal stenosis but no significant disc protrusion or stenosis. (Id. at 1119-20, 1802.) Treatment records note "chronic pain" and show that Melissa has been prescribed Norco, morphine, and other pain and anti-inflammatory medications, as well as TENS and manual therapy. (Id. at 368, 406-08, 412, 800-05, 1053, 1060-61, 1605.) She has reported relief with TENS and manual therapy. (Id. at 1053, 1060-61.) In 2016 she was noted to have mild gait instability. (Id. at 1086, 1577, 1597, 1606, 1611.) March 2017 records show that Melissa's gait was "normal in station and . . . steady" and her low back was "much improved." (Id. at 1053.)

Melissa suffers from asthma and uses inhalers to control her symptoms. (Id. at 404-05, 585, 606, 619, 632, 689, 719, 1086, 1455.) She also has been diagnosed with anemia, (id. at 775, 778, 812, 816, 1047, 1407, 1410-55, 1670, 1732, 1790, 1796, 1808), chronic migraines without aura, (id. at 585, 779, 1021, 1033-34, 1047, 1051-52, 1086, 1808), diabetes mellitus, (id. at 782, 784-85, 1018, 1033-34, 1047, 1086, 1796, 1808), and insomnia, (id. at 878, 1018, 1043).

## B. Hearing Testimony

In terms of her physical impairments, Melissa testified that she has "major problems" with her right knee and has been receiving injections. (A.R. 49.) She said that she suffers from knee pain "all the time." (Id. at 57.) She underwent three months of physical therapy, which she said helped her knee, but then she fell down a set of stairs and aggravated the injury. (Id. at 52.) Melissa testified that she also has experienced back problems, (id. at 50), and has received iron treatments for her anemia, (id. at 58).

As for mental impairments, Melissa testified that she suffers from anxiety and has difficulty when someone "gives [her] a hard time." (Id. at 50.) She has participated in counseling but stopped because of financial issues. (Id. at 53.) She said that she has a history of using cocaine but does not do so now and has struggled with bulimia and cutting. (Id. at 51, 53-54.) Sometimes she "space[s] out" and finds it "hard to concentrate." (Id. at 56.) She also has experienced memory issues. (Id.)

Melissa said that she spends her days mostly in her room in the dark but occasionally visits friends. (Id. at 52.) She goes grocery shopping once a week with

5

her mother, and her mother does most of the household chores because Melissa needs frequent breaks. (Id. at 52, 55-57).

An ME testified at the hearing that Melissa has been diagnosed with bipolar disorder, borderline personality disorder, generalized anxiety disorder, and a history of cocaine dependence. (Id. at 60.) He noted Melissa's difficulties with sleep, energy, concentration, worthlessness, racing thoughts, pressured speech, and panic attacks one to two times per month. (Id.) But the ME also noted the "skimpy" nature of the treatment notes relating to these impairments and the fact that Melissa is "relatively stable most of the time," as evidenced by her GAF scores of 52.[2] (Id. at 61.) The ME further testified that Melissa's bipolar disorder was in "full remission," according to the medical record, and he assessed her as having "moderate" limitations in her ability to understand, remember, and apply and concentrate, pace, and persist. (Id. at 61-62.)

A VE also testified at the hearing, describing the types of work that would be available to a hypothetical individual with various limitations described by the ALJ. (Id. at 63-75.) The VE testified that a person with the RFC the ALJ eventually assigned to Melissa could not work as a general clerk but could perform other jobs, such as assembler, production inspector, and packer. (Id. at 69-70.) The VE further

---

[2] "GAF scores of 51-60 indicate moderate symptoms or limitations in social, occupational, or school function." *Felts v. Saul*, ___ Fed. Appx. ___, 2019 WL 6893743, at *3 n.1 (7th Cir. Dec. 18, 2019). Although GAF is "no longer recognized in the American Psychiatric Association's DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS . . . it was used routinely in social security disability hearings during the time" of Melissa's proceedings. *See Brinley v. Berryhill*, 732 Fed. Appx. 461, 463 (7th Cir. 2018).

testified that if the hypothetical person were off task more than 15% of the work day, that limitation would be work-preclusive. (Id. at 73.)

C. **The ALJ's Decision**

The ALJ followed the required five-step process in evaluating Melissa's disability claims. *See* 20 C.F.R. § 404.1520(a). At step one the ALJ found that Melissa had not engaged in substantial gainful activity since December 1, 2013. (A.R. 20.) At step two the ALJ concluded that Melissa has severe impairments of degenerative disc disease, osteoarthritis in the knees and ankles, diabetes mellitus, asthma, migraines without aura, obesity, bipolar disorder, anxiety disorder, and polysubstance abuse in remission. (Id.) At step three the ALJ determined that none of Melissa's impairments, either alone or in combination, meets or medically equals any listed impairment. (Id. at 20-22.) With respect to the severity of Melissa's mental impairments, the ALJ considered the paragraph B criteria of Listings 12.04, 12.06, and 12.08 and found moderate limitations in understanding, remembering, and applying information and concentrating, persisting, and maintaining pace. (Id. at 21.) The ALJ found mild limitations in interacting with others and adapting and managing oneself.

Before turning to step four, the ALJ assessed Melissa as having a residual functional capacity ("RFC") to perform sedentary work with the following limitations: should never climb ladders, ropes, or scaffolds; can only occasionally perform other postural functions; should avoid concentrated exposure to extreme cold and heat, humidity, and fumes; can perform simple, routine activities; and can briefly and

7

superficially interact with coworkers, supervisors, and the public. (Id. at 22-28.) At step four the ALJ found that Melissa is unable to perform past relevant work. (Id. at 28.) But at step five the ALJ determined that Melissa can perform other jobs that exist in significant numbers in the national economy. (Id.)

## Analysis

Melissa argues that the ALJ erred by: (1) failing to adequately account for her mental and physical limitations in the RFC assessment; (2) improperly evaluating her subjective symptoms; and (3) accepting the VE's testimony even though he only provided "national numbers" for available work, rather than regional numbers. (R. 12, Pl.'s Mem. at 8-15.) The court reviews the ALJ's decision to ensure that it is supported by substantial evidence, meaning "more than a mere scintilla" but no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations and citations omitted). To adequately support a decision, the ALJ must "build a logical bridge from the evidence to his conclusion" that the claimant is not disabled. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). The court's role is neither to reweigh the evidence nor to substitute its judgment for the ALJ's. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). That said, if the ALJ committed an error of law or "based the decision on serious factual mistakes or omissions," reversal is required. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

8

## A. RFC Assessment

Melissa first argues that the ALJ failed to account for all of her mental and physical impairments. (R. 12, Pl.'s Mem. at 8-12.) In assessing a claimant's RFC, the ALJ must consider limitations supported by the medical record and, regardless of their level of severity, incorporate them into the RFC. *See* 20 C.F.R. § 404.1545. While "no magic words" are required, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record, including even moderate limitations." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (internal quotations and citation omitted). Doing so helps ensure that the VE "can exclude those jobs that the claimant would be unable to perform." *Id.* Also, an ALJ may not rely on "catch-all terms," like "simple, repetitive tasks," without explaining how such restrictions account for the claimant's mental deficits. *Id.*

As to her mental limitations, Melissa argues that at step three the ALJ acknowledged her moderate limitations in understanding, remembering, applying information, and in concentration, persistence, and pace, but then "included only the most minimal" limitations in the RFC.[3] (R. 12, Pl.'s Mem. at 8.) Melissa points to treating psychiatrist Dr. Anatoliy Pyslar's opinion and asserts that the ME endorsed his "more dire" findings, including that she likely would be off task up to 10% of a

---

[3] Melissa complains about the ALJ's "perfunctory and unsupported" analysis at step three. (R. 12, Pl.'s Mem. at 8.) She does not sufficiently develop her step-three argument, and thus the court considers this issue waived. *See Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived.").

9

work day, would be unable to maintain concentration for 15% of a workday, would be absent more than six workdays per month, and would be only 20% as effective as an average worker. (Id. at 8-10.) Melissa argues that having based his opinion on Dr. Pyslar's findings, the ME was not permitted to deviate from the severity of the mental limitations adopted by Dr. Pyslar. She further argues that the ALJ was not justified in relying on the ME's opinion that Melissa was relatively stable and thus only moderately impaired. (Id. at 14 (citing *Murphy v. Colvin*, 759 F.3d 811 (7th Cir. 2014) (finding that stability indicates only an absence of change and not the severity of an impairment)).)

The government counters that while the ME did base his opinion on Dr. Pyslar's findings, the ME qualified his endorsement and stated that he did not agree with the severity of—or "extreme"—limitations Dr. Pyslar endorsed. (R. 25, Govt.'s Mem. at 2.) As such, the government contends that the ALJ was justified in relying on the ME's opinion that Melissa's mental impairments were "relatively moderate." (Id. at 4.) The government disputes the applicability of *Murphy*, 759 F.3d at 819, because here the ALJ did not merely point to one doctor's medical notes showing a "stable" or "improving" condition to support his RFC analysis. (R. 25, Govt.'s Mem. at 3-4.) Instead the ALJ relied on the ME's characterization of the medical record as a whole as supporting less severe—or "moderate"—limitations and "relative[] stability." (Id. at 3 (citing A.R. 61).)

Based on the record in this case, the court finds that the ALJ sufficiently accounted for Melissa's mental limitations in his RFC finding. The ALJ assessed

10

Melissa as having a moderate limitation in understanding, remembering, and applying information, explaining that she herself did not allege difficulties with memory, completing tasks, understanding, following instructions, or using her hands when she submitted her functional report to the Social Security Administration ("SSA") in May 2015. (A.R. 21 (citing id. at 265).) The ALJ also found that Melissa had a moderate limitation in concentration, persistence, and pace. (Id.) Although the ALJ noted that Melissa reported occasional difficulties with concentrating, he found that the record did not support a more severe limitation. (Id.) The ALJ cited Melissa's 2015 functional report, which did not allege concentration limitations, and noted that she is able to use public transportation and manage her finances, demonstrating only a moderate level of severity. (Id.)

In making such findings, the ALJ gave "particular weight" to the opinion of the ME. (Id.) The ALJ noted that the ME acknowledged Melissa's diagnoses of bipolar disorder, borderline personality disorder, anxiety disorder, and cocaine dependency (prior to the alleged onset date), but found little support in the record for these impairments. (Id. at 26 (citing id. at 60 ("The problem with the record is that . . . the notes or documentation is pretty minimal. There's not much there to really draw from.")).) The evidence that appears in the record suggests that Melissa's symptoms are "relatively stable," according to the ME. (Id. (citing id. at 61).) Accordingly, the ME assessed a moderate level of severity with respect to Melissa's limitations in understanding, remembering, and applying information, and in concentration, persistence, and pace. (Id. at 27 (citing id. at 61-62).) The ME also noted that the

record did not support the "fairly severe ratings" adopted by Dr. Pyslar. (Id.) As such, the ME found that limiting Melissa to "simple, routine tasks" would sufficiently account for her moderate mental limitations. (Id.)

The ALJ was entitled to rely upon the ME's opinion. (Id. at 27.) The Seventh Circuit recently affirmed that "an ALJ may reasonably rely upon the opinion of a medical expert who translates [a claimant's limitations supported by the medical record] into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *see also Urbanek v. Saul*, ___ Fed. Appx. ___, 2019 WL 6842361, at *4 (7th Cir. Dec. 16, 2019) (finding that in formulating the RFC, the ALJ "appropriately relied" on testimony from a licensed psychologist who served as an impartial medical expert). This is especially true where, as here, the state agency psychologists also found that Melissa "retained the mental capacity to understand, remember, and carry out at least simple work, complete a normal workday, interact briefly and superficially with coworkers and supervisors, and adapt to workplace changes." (A.R. 26); *see also Urbanek*, 2019 WL 6842361, at *4 ("An expert's opinion that is supported by two agency doctor opinions is 'an adequate evidentiary foundation' to support [an RFC] assessment."). The ALJ accorded "some weight" to the opinions of the state agency psychologists because they found that Melissa has the ability to perform light work, and the ALJ concluded that the record showed she likely was limited to sedentary work. (A.R. 26.) In any event, the ALJ reasonably relied upon the ME's opinion and supported the mental RFC with substantial evidence.

As to her physical limitations, Melissa argues that the ALJ failed to account for how her "extreme" obesity exacerbated her physical pain and other physical and mental limitations. (R. 12, Pl.'s Mem. at 12.) For support, Melissa cites *Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014), for the rule that an ALJ's failure to address the effects of obesity on her RFC amounts to reversible error, (R. 12, Pl.'s Mem. at 12). The government distinguishes the present case from *Browning* by pointing to the ALJ's repeated references to Melissa's obesity, including at step two when he deemed her obesity a severe impairment and in his RFC assessment when he stated that he was reducing her RFC from light to sedentary work because of "the combination of impairments including her obesity." (R. 25, Govt.'s Mem. at 5 (citing A.R. 21, 26).) The government likens this case to *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018), in which the Seventh Circuit held that substantial evidence supported the ALJ's consideration of the claimant's obesity and its effects on the RFC.

The court finds that the ALJ adequately accounted for Melissa's obesity in the RFC assessment. At step two the ALJ found that her obesity "significantly limit[s] [her] ability to perform basic work activities." (A.R. 20.) At step three the ALJ considered whether her obesity was associated with "disturbance of the musculoskeletal system." (Id. at 21.) After a review of the record, the ALJ found no support for such a finding. (Id.) But in his RFC assessment, the ALJ limited Melissa to sedentary work because of "the combination of her impairments including her obesity." (Id. at 26.) Clearly this is not a case in which the ALJ ignored the claimant's obesity or its impact. *See Stephens*, 888 F.3d at 328. Substantial evidence thus

13

supports the ALJ's physical RFC. *See Pytlewski v. Saul*, ___ Fed. Appx. ___, 2019 WL 5884532, at *4 (7th Cir. Nov. 12, 2019) (finding that where "[t]he ALJ tied the RFC to the evidence in the record . . . [and] tailored [the] workplace setting to accommodate" the claimant's impairments and limitations therefrom, there was no error in the RFC assessment).

**B.     Symptom Evaluation**

Melissa next argues that the ALJ improperly dismissed her subjective complaints to justify his evaluation of her symptoms. (R. 12, Pl.'s Mem. at 13-14.) An ALJ must consider objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, course of treatment, and functional limitations when assessing subjective complaints. 20 C.F.R. § 404.1529(c); *see also* SSR 16-3p, 2017 WL 5180304, at *1 (2017). Typically, a court grants deference to a subjective symptom evaluation because an ALJ has the opportunity to observe the claimant testify. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Nevertheless, an ALJ's "failure to adequately explain his or her credibility finding by discussing specific reasons . . . is grounds for reversal." *Minnick*, 775 F.3d at 937.

Melissa argues that the ALJ rejected her complaints about pain and other limitations and incorrectly found that her "physical examinations have often been unremarkable." (Pl.'s Mem. at 13 (quoting A.R. 26).) Melissa contends that "the longitudinal record reveals physical examinations that are anything but unremarkable." (Id.) One factor that the ALJ must consider in evaluating a claimant's symptoms is the objective medical evidence. *See* 20 C.F.R. § 404.1529(c).

14

While the ALJ found sufficient evidence to support at least eight "severe impairments that create functional limitations," he concluded that the record as a whole did not support Melissa's allegations that she was unable to perform any work. (A.R. 26.) The ALJ cited numerous records showing the "moderate or mild severity" of her physical impairments, including examinations demonstrating "normal gait, normal range of motion, normal strength, and normal sensation" and the efficacy of various treatment methods in controlling her symptoms. (Id.) Similarly, psychological records show "moderate[] impair[ment]" and "stable functioning over time" with "intact memory and focused attention and concentration" and "normal mood and affect." (Id.) "Taken as a whole," the ALJ determined that the nearly 1,900-page record did not demonstrate the severity of symptoms Melissa claimed. (Id.)

The court finds that the ALJ adequately explained his symptom evaluation, providing specific reasons for his decision. In addition to considering the objective medical evidence, the ALJ supported his symptom evaluation with medical opinion evidence. (Id. at 26-27.) As the government points out, "[o]f the six doctors who reviewed the record and opined on [Melissa's RFC], only one gave more severe limitations than those found by the ALJ." (R. 25, Govt.'s Mem. at 7.) The ALJ also considered Melissa's daily activities, which include "making meals, doing light housework, going shopping, using public transportation, reading, and watching television." (A.R. 26.) Melissa claims that the ALJ improperly relied upon these activities without explaining how they translate into an ability to work full time in a competitive setting, citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

15

(R. 12, Pl.'s Mem. at 14.) But Melissa ignores the ALJ's explanation—that she "remains able to perform a number of activities that are consistent with basic work functions" and, therefore, the limitations from her impairments are not "totally work preclusive." (A.R. 26.) The court finds no error in the subjective symptom assessment.

C.     **VE Testimony**

Finally, Melissa asserts that the ALJ committed reversible error at step five when he accepted the VE's testimony that other available work existed in the "national economy," without specifying the number of jobs for a particular region. (R. 12, Pl.'s Mem. at 14.) She asserts that "national economy" means "the region where the individual resides or in several regions of the country," under the applicable rules and regulations. (Id. (citing SSR 96-9; 20 C.F.R. § 404.1566).) According to her, the ALJ should not have relied on the VE's testimony because the VE provided only the numbers of jobs available nationally. (Id. at 14-15.)

The government responds that Melissa forfeited this argument by failing to object to the VE's testimony during the hearing. (R. 25, Govt.'s Mem. at 9 (citing *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016)).) In her reply Melissa calls the government's forfeiture argument "specious" without providing any explanation. (R. 26, Pl.'s Reply at 2.) The VE could have amended his testimony if Melissa had objected during the hearing. She did not and therefore she has forfeited her argument. *See Brown*, 845 F.3d at 254; *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004).

16

In any event, the government further responds that the Seventh Circuit has rejected Melissa's step-five argument. (R. 25, Govt.'s Mem. at 9.) In *Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir. 2014), the court found that "if there is a large number of . . . jobs in any of the three areas [local, regional, and national] the claimant loses." In *Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015), the court reaffirmed that "if there is a significant number of jobs that the applicant . . . can perform anywhere in the United States he is deemed not disabled." The VE here testified that in light of Melissa's RFC, she could work as an assembler, inspector, or packer—and that about 90,000 assembly jobs, 52,000 inspector jobs, and 35,000 packer jobs exist in the national economy. (A.R. 29, 71.) The ALJ reasonably relied upon these numbers in finding other work available at step five.

## Conclusion

For the foregoing reasons, Melissa's motion for summary judgment is denied and the government's is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**